**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

| | | |
|---|---|---|
| FEDERAL TRADE COMMISSION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 10-0060-CV-W-FJG |
| REAL WEALTH, INC., and | ) | |
| LANCE MURKIN, | ) | |
| | ) | |
| Defendants. | ) | |

## FINAL JUDGMENT AND ORDER FOR PERMANENT INJUNCTION

Pending before the Court are Plaintiff's Motion for Summary Judgment (Doc. No. 116), its Suggestions in Support thereof (Doc. No. 117), Defendants' Suggestions in Opposition thereto (Doc. No. 133), and Plaintiff's Reply Suggestions (Doc. No. 140). Defendant Lance Murkin concedes he is concurrently liable with Defendant Real Wealth, Inc. in this action. Together, Defendants agree that the Court may enter an Order of Permanent Injunction that essentially makes permanent the Stipulated Preliminary Injunction currently in place (Doc. No. 70). Defendants also concede that the Court may enter partial summary judgment for a sum certain in restitution. Upon thorough review of the uncontroverted facts, the appropriate legal standard, and the application of the law to those facts, the Court determines that Plaintiff's motion should be granted.

## I. BACKGROUND

The Federal Trade Commission ("FTC") brought this enforcement action against

Defendants  Lance Murkin ("Murkin") and Real Wealth, Inc., a corporation, also d/b/a American Financial Publications, Emerald Press, Financial Research, National Mail Order Press, Pacific Press, United Financial Publications, Wealth Research Marketing Group, and Wealth Research Publications ("Real Wealth") (collectively, "Defendants") for alleged violations of § 5(a) of the Federal Trade Commission Act, 15 U.S.C. § 45(a). Section 5(a) prohibits unfair or deceptive acts in or affecting commerce.  Defendant Real Wealth, Inc. is a Missouri corporation, and Defendant Murkin is its president, manager, and sole owner.

The FTC claims Defendants have engaged in a variety of illegal business activities that have generated millions of dollars from marketing their schemes to at least 100,000 consumers nationwide.  The various schemes all offer a simple opportunity to make substantial income, and defendants promoted the schemes through direct-mail solicitations and magazine advertising.  There are two general categories: work-at-home products and grant-related products and services.  Based on Murkin's estimate, the FTC asserts that Defendants derived gross revenues from these schemes in the amount of $10,400,397.10 from 2004 through 2009.

The FTC filed its Complaint for Permanent Injunction and Other Equitable Relief ("Complaint") pursuant to Section 13(b) of the Federal Trade Commission Act, 15 U.S.C. § 53(b), against Defendants on January 21, 2010 (Doc. No. 1).  The FTC concurrently filed a Motion for Temporary Restraining Order with Asset Freeze (Doc. No. 3).  This Court entered a Temporary Restraining Order against Defendants on January 26, 2010 ("TRO") (Doc. No.13), which prohibited defendants from making false representations in connection with money-making schemes, froze defendants' assets, and granted the FTC leave to conduct certain expedited discovery.  Defendants agreed

to the TRO but moved to modify it to release frozen assets for Murkin's living expenses and for Defendants' attorney fees and defense costs (Doc. No. 36). The Court denied the Motion (Doc. No. 49). On March 24, 2010, the Court entered a stipulated preliminary injunction against Defendants ("Preliminary Injunction Order") (Doc. No. 70). The Preliminary Injunction Order remains in effect.

After the FTC filed the instant Motion for Summary Judgment (Doc. No. 116), Murkin provided notice that he had filed a Voluntary Petition under Chapter 7 of Title 11 of the United States Bankruptcy Code (Doc. No. 124). Although Murkin originally took the position that his bankruptcy filing had the effect of staying these proceedings, he ultimately conceded that this action is exempt from the automatic stay (Doc. No. 130). The parties subsequently completed their briefing of the summary judgment issues, and the motion is now ripe for determination.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the movant demonstrates that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). The facts and inferences are viewed in the light most favorable to the nonmoving party. Fed. R. Civ. P. 56(c); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-590 (1986). The moving party must carry the burden of establishing both the absence of a genuine issue of material fact and that such party is entitled to judgment as a matter of law. Matsushita, 475 U.S. at 586-90.

Once the moving party has met this burden, the nonmoving party may not rest on the allegations in the pleadings, but by affidavit or other evidence must set forth facts

showing that a genuine issue of material fact exists.  Fed. R. Civ. P. 56(c)(1), (e); <u>Lower Brule Sioux Tribe v. South Dakota</u>, 104 F.3d 1017, 1021 (8th Cir. 1997).  To determine whether the disputed facts are material, courts analyze the evidence in the context of the legal issues involved.  <u>Lower Brule</u>, 104 F.3d at 1021.  Thus, the mere existence of factual disputes between the parties is insufficient to avoid summary judgment.  <u>Id.</u>  Rather, "the disputes must be outcome determinative under prevailing law."  <u>Id.</u> (citations omitted).    Furthermore, to establish that a factual dispute is genuine and sufficient to warrant trial, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the facts."  <u>Matsushita</u>, 475 U.S. at 586.  Demanding more than a metaphysical doubt respects the appropriate role of the summary judgment procedure: "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action."  <u>Celotex</u>, 477 U.S. at 327.

### III. DISCUSSION

#### A.  Section 5(a) of the FTC Act

Section 5(a) of the FTC Act prohibits "unfair or deceptive acts or practices in or affecting commerce."  15 U.S.C. § 45(a).  To establish a violation of Section 5(a), the FTC must show that Defendants made material representations likely to mislead consumers acting reasonably under the circumstances in a way that is material.  <u>FTC v. Cyberspace.com, LLC</u>, 453 F.3d 1196, 1199 (9th Cir. 2006).  A representation is material if it involves information likely to affect a consumer's decision to purchase a particular product or service.  <u>See</u> <u>Kraft, Inc. v. FTC</u>, 970 F.2d 311, 322 (7th Cir. 1992).

Both express and implied representations are actionable under Section 5(a).  See FTC

v. Figgie Int'l, Inc., 994 F.2d 595, 604 (9th Cir. 1993).

A solicitation is likely to mislead consumers acting reasonably if the express or

implied representation made by the solicitation is false, or if the advertiser "lacked a

reasonable basis – or adequate substantiation – for asserting that the representation

was true."  FTC v. Nat'l Urological Group, 645 F. Supp. 2d 1167, 1190 (N.D. Ga. 2008).

A solicitation may be likely to mislead consumers acting reasonably "by virtue of the net

impression it creates even though [it] also contains truthful disclosures."

Cyberspace.com, 453 F.3d at 1200.  The FTC need not prove that consumers actually

relied on the misrepresentations; rather, "the FTC need merely show that the

misrepresentations or omissions were of a kind usually relied upon by reasonable and

prudent persons, that they were widely disseminated, and that the injured consumers

actually purchased the defendants' product."  FTC v. Security Rare Coin & Bullion

Corp., 931 F.2d 1312, 1316 (8th Cir. 1991).


### B.  Material Uncontroverted Facts

The FTC relies upon 95 facts it deems material and uncontroverted to support its

Motion for Summary Judgment.  In their Reply Suggestions, Defendants explicitly adopt

the first fourteen of those facts, but in an appended affidavit Murkin asserts how five of

the facts are "untrue."  As to the remaining 90 facts that defendants fail to specifically

controvert, they are admitted as a matter of law.  W.D. Mo. R. 56.1(a) ("All facts set

forth in the statement of the movant shall be deemed admitted for the purpose of

summary judgment unless specifically controverted by the opposing party.").  With

respect to the five facts Defendants purport to controvert, they offer nothing more than

Murkin's unsubstantiated and self-serving affidavits which fail to show that "a fact . . . is genuinely disputed." Fed. R. Civ. P. 56(c)(1). Moreover, the assertions in Murkin's affidavit are not supported by admissible evidence and largely contradict Defendants' own documents and testimony. The affidavits thus do not satisfy the requirements of Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.").

The Court finds that each of the FTC's Material Facts set forth in its Suggestions in Support of its Motion for Summary Judgment is uncontroverted and amply supported by record evidence. The Court therefore adopts, by reference hereto, each of the 95 Material Facts set forth in the Plaintiff's Suggestions in Support of its Motion for Summary Judgment, Doc. No. 117, at 9-43, as its own Findings of Fact.

### C. Liability and Relief

Defendants have conceded liability. In their Suggestions in Opposition to Plaintiff's Motion for Summary Judgment, "Murkin concedes that he is concurrently liable with the Defendant Real Wealth Inc. as regards all judgments and orders which the Court may hereinafter enter as against Defendant Real Wealth, Inc." (Doc. No. 133 at 1). Defendants further stipulate that the Court may enter partial summary judgment against them in a sum certain, and that the Court may enter an Order of Permanent Injunction which makes permanent the outstanding Preliminary Injunction as modified by subsequent order. (Doc. No. 133 at 2, referring to Doc. Nos. 70, 115). Plaintiff has established Defendants' liability on each of the three counts set forth in the Complaint,

all of which allege that Defendants violated § 5(a) of the FTC Act.  Section 5(a) prohibits "unfair or deceptive acts or practices in or affecting commerce."  Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by § 5(a).

Plaintiff seeks monetary relief in the amount of $10,400,397.10, the amount Defendants admit they received in gross revenues from sales of their work-at-home products and grant-related products in the form of booklets and pamphlets, and grant location services, to thousands of consumers throughout the United States. (See Doc. No. 117, Material Facts 15 and 22) Defendants' efforts to qualify their admission with self-serving affidavits that have no admissible evidence in support thereof are unavailing.

Although Defendants stipulate to the entry of a Permanent Injunction, they argue that such Injunction should not include a ban against the sale or marketing of any work-at-home or grant-related product or service because their past conduct does not warrant the prohibition.  Their argument is without merit.  Defendants do not dispute the material facts that Plaintiff set forth to demonstrate the need for broad injunctive relief, including customer complaints and refunds, previous investigations concerning Defendants' deceptive business practices, Defendants' knowledge that their business practices were deceptive, and Murkin's recent attempt to continue such business practices with the start of a "networking marketing" business.  (See Doc. No. 117, Material Facts 73-95). These facts demonstrate that consumers have suffered substantial injury as a result of Defendants' violations of the FTC Act, and § 13(b) of the Act empowers the Court to grant injunctive and other relief as the Court deems appropriate to halt violations of FTC-enforced laws.  15 U.S.C. § 53(b) ("in a proper case. . . and after proper proof, the

court may issue a permanent injunction").

## IV. ORDER

Accordingly, the Court orders:

This Court has jurisdiction over the subject matter of this case and of the parties hereto;

Venue is proper in this District under 15 U.S.C. § 53(b) and 28 U.S.C. § 1391(b) and (c);

The activities alleged in the Complaint are in or affecting commerce as that term is defined in Section 4 of the FTC Act, 15 U.S.C. § 44;

The Complaint states a claim upon which relief may be granted under Sections 5(a) and 13(b) of the FTC Act, 15 U.S.C. §§ 45(a) and 53(b);

Defendants have violated Section 5(a) of the FTC Act, 15 U.S.C. §§ 45(a) and 53(b) as alleged in Counts I through III the Complaint;

All of Defendants' assets frozen pursuant to Section II of the TRO (Doc. No. 13) and Section II of the Stipulated Preliminary Injunction (Doc. No. 70) have been and continue to be held in constructive trust for consumers who purchased Defendants' work-at-home opportunities or grant-related products or services.

Defendant Murkin filed a petition for relief under Chapter 7 of the Bankruptcy Code on March 25, 2011 in the Bankruptcy Court for the Western District of Missouri, in the case styled *In Re Murkin*, Case No. 11-41305-dvd7 ("Murkin Bankruptcy Case").

The Commission's prosecution of this action, entry of judgment, and enforcement of a judgment other than a money judgment are excepted from the automatic stay under 11 U.S.C. § 362(b)(4), as an exercise of its police or regulatory powers.  The continuation of the asset freeze injunction is also excepted from the stay under 11

U.S.C. § 362(b)(4) to the extent set forth in the Asset Freeze section of this Order.

Entry of this Final Judgment and Order for Permanent Injunction ("Final Judgment") is in the public interest. It is also appropriate in light of Defendants' violations of Sections 5(a) and 13(b) of the FTC Act, 15 U.S.C. §§ 45(a) and 53(b); and

This Final Judgment is remedial in nature and shall not be construed as payment of a fine, penalty, punitive assessment, or forfeiture.

## DEFINITIONS

For purposes of this Final Judgment, the following definitions shall apply:

1.     **"Asset"** means any legal or equitable interest in, right to, or claim to, any real and personal property, including, but not limited to, "goods," " instruments," "equipment," "fixtures," "general intangibles," "inventory," "checks," "notes" (as these terms are defined in the Uniform Commercial Code), and all chattel, leaseholds, contracts, mail or other deliveries, shares of stock, lists of consumer names, accounts, credits, premises, receivables, funds, reserve funds, and cash, wherever located.

2.     **"Assisting Others"** includes, but is not limited to: (1) performing customer service functions, including, but not limited to, receiving or responding to consumer complaints; (2) formulating or providing, or arranging for the formulation or provision of, any marketing material; (3) providing names of, or assisting in the generation of, potential customers; (4) performing marketing or billing services of any kind; or (5) processing credit and debit card payments.

3.     **"Corporate Defendant"** means Real Wealth, Inc., d/b/a American Financial Publications, Emerald Press, Financial Research, National Mail Order Press, Pacific Press, United Financial Publications, Wealth Research Marketing Group, and Wealth Research Publications, and its successors and assigns.

4.      **"Defendants"** means the Individual Defendant and the Corporate Defendant, individually, collectively, or in any combination.

5.      **"FTC" or "Commission"** means Federal Trade Commission.

6.      **"Grant-related product or service"** means any product or service, including a plan or program, that is represented, directly or by implication, to assist a consumer in any manner in obtaining money, a grant, or similar type of financial assistance from the government or any other source.

7.      **"Individual Defendant"** means Lance Murkin.

8.      **"Material"** means likely to affect a person's choice of, or conduct regarding, goods and services.

9.      **"Person"** means a natural person, organization, or other legal entity, including a corporation, partnership, proprietorship, association, limited liability company, cooperative, or any other group or combination acting as an entity.

10.     **"Relate to"** means refer to, concern, regard, reflect, discuss, constitute, mention, pertain to, allude to or associate with.  "Relating to" means referring to, concerning, regarding, reflecting, discussing, constituting, mentioning, pertaining to, alluding to or associated with.

11.     **"Representatives"** means officers, agents, servants, employees, and attorneys; and those in active concert or participation with Defendants who receive actual notice of this order by personal service or otherwise.

12.     **"Work-at-home opportunity"** means any program, plan, product, or service represented, expressly or by implication, to assist an individual in any manner to earn money while working from home or any location other than the business premises of the Defendants or their Representatives.

13.     The words **"and"** and **"or"** shall be understood to have both conjunctive and disjunctive meanings.

## A.  BAN ON MARKETING OR SALE OF WORK-AT-HOME OPPORTUNITIES AND GRANT-RELATED PRODUCTS OR SERVICES

**IT IS HEREBY ORDERED** that Defendants and their Representatives, whether acting directly or through any other person or any corporation or other entity, subsidiary, division, or other device, are permanently restrained and enjoined from:

1.     Advertising, marketing, promoting, offering for sale, or selling any work-at-home opportunity or grant-related product or service; and

2.     Assisting others engaged in advertising, marketing, promoting, offering for sale or selling any work-at-home opportunity or grant-related product or service.

Nothing in this Final Judgment shall be read as an exception to this Section.

## B. PROHIBITION AGAINST MAKING MISREPRESENTATIONS

**IT IS FURTHER ORDERED** that, in connection with the advertising, marketing, promotion, offering for sale, or sale of any product or service, Defendants and their Representatives, whether acting directly or through any entity, corporation, subsidiary, division, affiliate or other device, are hereby restrained and enjoined from:

1.     Making any representation, expressly or by implication, about any material aspect of an investment opportunity including, but not limited to, risk, liquidity, earnings potential, or profitability, unless the representation is true and, at the time that the representation is made, the Defendants possess and rely upon competent and reliable evidence that substantiates the representation;

2. Making, in any manner, expressly or by implication, any false or misleading statement or representation of material fact, term, or condition, including but not limited to any false or misleading statement regarding:

a. The total costs to purchase, receive, or use, and the quantity of, such products or services;

b. Any material restriction, limitations, or condition to purchase, receive, or use such products or services;

c. Any material aspect of the performance, efficacy, nature or central characteristics of such products or services;

d. Any material aspect of the nature or terms of the refund, cancellation, exchange, or repurchase policies applicable to such products or services; and

e. The amount or type of resources or labor required to make money using such products or services.

## C. PROHIBITIONS AGAINST DISCLOSURE OF CUSTOMER INFORMATION

**IT IS FURTHER ORDERED** that Defendants and their Representatives are permanently restrained and enjoined from:

1. Disclosing, using, or benefitting from customer information, including the name, address, telephone number, e-mail address, social security number, other identifying information, or any data that enables access to a customer's account (including a credit card, bank account, or other financial account), of any person that was obtained by any Defendant prior to entry of this Final Judgment in connection with the sale of any product or service; and

2.      Failing to dispose of such customer information in all forms in their possession, custody, or control within thirty (30) days after entry of this Final Judgment. Disposal shall be by means that protect against unauthorized access to the customer information, such as by burning, pulverizing, or shredding any papers, and by erasing or destroying any electronic media, to ensure that the customer information cannot practicably be read or reconstructed.

 *Provided, however*, that customer information need not be disposed of, and may be disclosed, to the extent requested by a government agency or required by a law, regulation, or court order.

## D.  MONETARY JUDGMENT

 **IT IS FURTHER ORDERED** that:

A.       Judgment is hereby entered in favor of the Commission and against Defendants, jointly and severally, in the amount of **TEN MILLION FOUR HUNDRED THOUSAND THREE HUNDRED NINETY-SEVEN DOLLARS AND TEN CENTS ($10,400,397.10)**, which is the amount of injury suffered by consumers.  The Court has previously ruled that this is the proper measure of monetary relief in this case.  (Doc. No. 115 at § III(3), adopting the analysis and conclusions set forth in Doc. No. 111);

B.      All frozen assets of Defendants are subject to a constructive trust in favor of such consumers; and

C.      All funds paid pursuant to this Final Judgment shall be deposited into a fund administered by the Commission or its agents to be used for equitable relief, including but not limited to redress to consumers, and any attendant expenses for the administration of such equitable relief.  In the event that direct redress to consumers is wholly or partially impracticable or funds remain after redress is completed, the

Commission may apply any remaining funds for such other equitable relief (including consumer information remedies) as it determines to be reasonably related to Defendants' practices alleged in the Complaint. Any funds not used for such equitable relief shall be deposited to the United States Treasury as disgorgement. The Defendants shall have no right to challenge the Commission's choice of remedies under this Paragraph. The Defendants shall have no right to contest the manner of distribution chosen by the Commission.

## E. ASSET FREEZE

**IT IS FURTHER ORDERED** that Defendants and their Representatives are hereby restrained and enjoined, until further order of this Court, from:

1. Transferring, encumbering, selling, concealing, pledging, hypothecating, assigning, spending, withdrawing, disbursing, conveying, gifting, dissipating, or otherwise disposing of any funds, property, coins, lists of consumer names, shares of stock, or other Assets, wherever located, that are (a) owned or controlled by or held for the benefit of, directly or indirectly, any of the Defendants, in whole or in part; (b) owned or controlled by or in the actual or constructive possession of any of the Defendants; (c) held by an agent or service provider of any of the Defendants, as a retainer for the agent's provision of services to a Defendant; or (d) owned, controlled by, or in the actual or constructive possession of, or otherwise held for the benefit of, any corporation, partnership, or other entity directly or indirectly owned or controlled by any of the Defendants, including, but not limited to, any Assets held by, for, or subject to access by, Defendants, at any bank or savings and loan institution, or with any broker-dealer, escrow agent, title company, commodity trading company, precious metal dealer, or other financial institution or depository of any kind;

2.      Opening or causing to be opened any safe deposit boxes titled in the name of any of the Defendants, or subject to access by any of the Defendants;

3.      Obtaining a personal or secured loan encumbering the Assets of Defendants;

4.      Incurring charges or cash advances on any credit or debit card issued in the name, singly or jointly, of the Corporate Defendants, or any corporation, partnership, or other entity directly or indirectly owned or controlled by any of the Defendants;

5.      Incurring liens or other encumbrances on real property, personal property, or other Assets titled in the name, individually or jointly, of Defendants or of any corporation, partnership or other entity directly or indirectly owned, managed or controlled by Defendants; and

6.      Failing to disclose to the FTC, upon service of this Final Judgment, information that fully identifies each Asset of the Defendants, and each entity holding such Asset, including, without limitation, the entity's name, address, and telephone number, the number of the account, and the name under which the account is held.

*Provided however*, the freeze imposed in this Section shall apply to: (a) Assets existing at the time the TRO was entered (January 26, 2010); (b) any Assets any Defendant acquired after the time the TRO was entered (and before the entry of this Final Judgment) if the Assets were derived from activity prohibited by the TRO or Stipulated Preliminary Injunction; and (c) any Assets any Defendant acquired after the time this Final Judgment was entered if the Assets were derived from activity prohibited by this Final Judgment.

## F.  DUTIES OF ASSET HOLDERS

**IT IS FURTHER ORDERED** that any financial or brokerage institution, any business entity, or any other person having possession, custody, or control of any

records of any of the Defendants, or of any account, safe deposit box, or other Asset titled in the name of any of the Defendants, either individually or jointly or held for the benefit of any of the Defendants, or which has maintained any such account, safe deposit box, or other Asset and which has held such Asset(s) pursuant to the TRO or Preliminary Injunction entered in this case, shall, ***until further order of this Court***:

1. Hold and retain within its control and prohibit the transfer, encumbrance, pledge, assignment, removal, withdrawal, disbursement, dissipation, sale, conversion or other disposal of any such account or other Asset, except for transfers or withdrawals authorized by further order of this Court;

2. Deny all persons access to any safe deposit box titled individually or jointly in the name of, or otherwise subject to access by, any of the Defendants; and

3. Upon request by counsel for the FTC, promptly provide the FTC with copies of all records or other documentation pertaining to such account or Asset, including but not limited to originals or copies of account applications, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and safe deposit box logs.

## G.  COMPLIANCE MONITORING

**IT IS FURTHER ORDERED** that, for the purpose of monitoring and investigating compliance with any provision of this Final Judgment:

1. Within ten (10) days of receipt of written notice from an employee or agent of the Commission, Defendants each shall submit additional written reports, which are true and accurate and sworn to under penalty of perjury; produce documents for inspection and copying; appear for deposition; and provide entry during normal

business hours to any business location in each Defendant's possession or direct or indirect control to inspect the business operation;

2.      In addition, the Commission is authorized to use all other lawful means, including but not limited to:

        a.      obtaining discovery from any person, without further leave of court, using the procedures prescribed by Fed. R. Civ. P. 30, 31, 33, 34, 36, 45 and 69;

        b.      having its employees or agents pose as consumers and suppliers to Defendants, their employees, or any other entity managed or controlled in whole or in part by any Defendant, without the necessity of identification or prior notice; and

3.      Defendants each shall permit employees or agents of the Commission to interview any employer, consultant, independent contractor, representative, agent, or employee who has agreed to such an interview, relating in any way to any conduct subject to this Final Judgment.  The person interviewed may have counsel present. ***Provided however,*** that nothing in this Final Judgment shall limit the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1, to obtain any documentary material, tangible things, testimony, or information relevant to unfair or deceptive acts or practices in or affecting commerce (within the meaning of 15 U.S.C. § 45(a)(1)).

### H.  COMPLIANCE REPORTING

**IT IS FURTHER ORDERED** that, for the purpose of monitoring and investigating compliance with any provision of this Final Judgment:

1.      For a period of five (5) years from the date of entry of this Final Judgment,

a. The Individual Defendant shall notify the Commission of the following:

    i. any changes in the Defendant's residence, mailing addresses, and telephone numbers, within ten (10) days of the date of such change;

    ii. any changes in the Defendant's employment status (including self-employment), and any change in Defendant's ownership in any business entity, within ten (10) days of the date of such change. Such notice shall include the name and address of each business that Defendant is affiliated with, employed by, creates or forms, or performs services for; a detailed description of the nature of the business; and a detailed description of Defendant's duties and responsibilities in connection with the business or employment; and

    iii. any changes in the Defendant's name or use of any aliases or fictitious names within ten (10) days of the date of such change;

b. Defendants shall notify the Commission of any changes in structure of the Defendant or any business entity that any Defendant directly or indirectly controls, or has an ownership interest in, that may affect compliance obligations arising under this Final Judgment, including but not limited to incorporation or other organization; a dissolution, assignment, sale, merger, or other action; the creation or dissolution of a subsidiary, parent, or affiliate that engages in any

acts or practices subject to this Final Judgment; or a change in the business name or address, at least thirty (30) days prior to such change, *provided* that, with respect to any such change in the business entity about which a Defendant learns less than thirty (30) days prior to the date such action is to take place, such Defendant shall notify the Commission as soon as is practicable after obtaining such knowledge.

2. One hundred eighty (180) days after the date of entry of this Final Judgment and annually thereafter for a period of five (5) years, Defendants each shall provide a written report to the Commission, which is true and accurate and sworn to under penalty of perjury, setting forth in detail the manner and form in which they have complied and are complying with this Final Judgment. This report shall include, but not be limited to:

a. For the Individual Defendant:

 i. Defendant's then-current residence address, mailing addresses, and telephone numbers;

 ii. Defendant's then-current employment status (including self-employment), including the name, addresses, and telephone numbers of each business that Defendant is affiliated with, employed by, or performs services for; a detailed description of the nature of the business; and a detailed description of Defendant's duties and responsibilities in connection with the business or employment;

 iii. Any other changes required to be reported under Paragraph 1 of this Section.

      b.      For all Defendants:

            i.      A copy of each acknowledgment of receipt of this Final Judgment, obtained pursuant to the Section titled "Distribution of Order;" and

            ii.      Any other changes required to be reported under Paragraph 1 of this Section.

3.      Each Defendant shall notify the Commission of the filing of a bankruptcy petition by such Defendant within fifteen (15) days of filing.

4.      For the purposes of this Final Judgment, Defendants shall, unless otherwise directed by the Commission's authorized employee or agent, send by overnight courier all reports and notifications required by this Final Judgment to the Commission, to the following address:

> Associate Director for Enforcement
> Federal Trade Commission
> 600 Pennsylvania Avenue, N.W., Room NJ-2122
> Washington, D.C. 20580
> RE:  *FTC v. Real Wealth, Inc., et al.*, 10-00060-CV-W-FJG

*Provided* that, in lieu of overnight courier, Defendants may send such reports or notifications by first-class mail, but only if Defendants contemporaneously send an electronic version of such report or notification to the Commission at: DEBrief@ftc.gov.

5.      For purposes of the compliance reporting and monitoring required by this Final Judgment, the Commission is authorized to communicate directly with the Individual Defendant.

## I.  RECORD-KEEPING PROVISIONS

**IT IS FURTHER ORDERED** that, for a period of eight (8) years from the date of entry of this Final Judgment, the Corporate Defendant and the Individual Defendant, for any business for which he is the majority owner or directly or indirectly controls,  are hereby restrained and enjoined from failing to create and retain the following records:

1.      Accounting records that reflect the cost of goods or services sold, revenues generated, and the disbursement of such revenues;

2.      Personnel records accurately reflecting:  the name, address, and telephone number of each person employed in any capacity by such business, including as an independent contractor; that person's job title or position; the date upon which the person commenced work; and the date and reason for the person's termination, if applicable;

3.      Customer files containing the names, addresses, phone numbers, dollar amounts paid, quantity of items or services purchased, and description of items or services purchased, to the extent such information is obtained in the ordinary course of business;

4.      Complaints and refund requests (whether received directly, indirectly, or through any third party) and any responses to those complaints or requests;

5.      Copies of all sales scripts, training materials, advertisements, or other marketing materials; and

6.      All records and documents necessary to demonstrate full compliance with each provision of this Final Judgment, including but not limited to, copies of acknowledgments of receipt of this Final Judgment required by the Sections titled "Distribution of Order" and "Acknowledgment of Receipt of Order" and all reports submitted to the Commission pursuant to the Section titled "Compliance Reporting."

## J. DISTRIBUTION OF ORDER

**IT IS FURTHER ORDERED** that, for a period of five (5) years from the date of entry of this Final Judgment, Defendant shall deliver copies of the Final Judgment as directed below:

1. Corporate Defendant: The Corporate Defendant must deliver a copy of this Final Judgment

to (a) all of its principles, officers, directors, and managers; (b) all of its employees, agents, and representatives who engage in conduct related to the subject matter of the Final Judgment; and (c) any business entity resulting from any change in structure set forth in the Section titled "Compliance Reporting." For current personnel, delivery shall be within five (5) days of service of the Final Judgment upon such Defendant. For new personnel, delivery shall occur prior to them assuming their responsibilities. For any business entity resulting from any change in structure set forth in the Section titled "Compliance Reporting," delivery shall be at least ten (10) days prior to the change in structure.

2. Individual Defendant as Control Person: For any business that Individual Defendant controls, directly or indirectly, or in which any Defendant has a majority ownership interest, Individual Defendant must deliver a copy of this Final Judgment to (a) all principals, officers, directors, and managers of that business; (b) all employees, agents, and representatives of that business who engage in conduct related to the subject matter of the Final Judgment; and (c) any business entity resulting from any change in structure set forth in the Section titled "Compliance Reporting." For current personnel, delivery shall be within five (5) days of entry of this Final Judgment. For new personnel, delivery shall occur prior to them assuming their responsibilities. For any business entity resulting from any change in structure set forth in the Section titled

"Compliance Reporting," delivery shall be at least ten (10) days prior to the change in structure.

4.      The Individual Defendant must secure a signed and dated statement acknowledging receipt of the Final Judgment, within thirty (30) days of delivery, from all persons receiving a copy of the Final Judgment pursuant to this Section.

## K.  ACKNOWLEDGMENT OF RECEIPT OF ORDER

**IT IS FURTHER ORDERED** that Individual Defendant within five (5) business days of receipt of this Final Judgment as entered by the Court, shall submit to the Commission a truthful sworn statement acknowledging receipt of this Final Judgment.

## L.  RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this matter for purposes of construction, modification and enforcement of this Final Judgment.

**IT IS SO ORDERED.**


Date:___05/17/11_____                          _/s/ Fernando J. Gaitan, Jr._____
Kansas City, Missouri                             Fernando J. Gaitan, Jr.
                                                 Chief United States District Judge