UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

**FEDERAL TRADE COMMISSION,**

    Plaintiff,

     v.                                                     Case No. 10-0060CV-W-FJG

**REAL WEALTH, INC.**, a corporation, also
d/b/a American Financial Publications,
Emerald Press, Financial Research, National
Mail Order Press, Pacific Press, United
Financial Publications, Wealth Research
Marketing Group, and Wealth Research
Publications, and

**LANCE MURKIN**, individually and as an
officer of REAL WEALTH, INC.,

    Defendants.

## ORDER FOR TURNOVER OF CERTAIN
## FROZEN ASSETS HELD BY THIRD PARTIES

Currently pending before the Court is Plaintiff Federal Trade Commission's ("FTC or Commission") Motion for Turnover of Certain Frozen Assets Held by Third Parties (Doc. No. 151).

**I. BACKGROUND**

On May 17, 2011, the Court entered its Final Judgment and Order for Permanent Injunction (Doc. No. 142) ("Final Judgment") in favor of Plaintiff FTC. The Final Judgment, among other things, holds Defendants jointly and severally liable for consumer injury of $10,400,397.10, caused by Defendants' violations of Section 5(a) of the Federal Trade Commission Act; permanently enjoins Defendants from marketing or selling work-at-home or

grant-related products or services; maintains, until further Order of the Court, the freeze on Defendants' assets imposed by the Temporary Restraining Order ("TRO") (Doc. No. 13) and Stipulated Preliminary Injunction (Doc. No. 70), and modified by the Court's February 28, 2011 Order (Doc. No. 115); and imposes a constructive trust over all of Defendants' frozen assets in favor of Defendants' consumer victims. (Doc. No. 142 at 8-16.)

Prior to the Court's entry of the Final Judgment, Defendant Murkin filed a petition for relief under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of Missouri in the case styled *In re Murkin*, Case No. 11-41305-dvd7 (Bankr. W.D. Mo. filed Mar. 25, 2011) ("Murkin Bankruptcy Case"). Pursuant to 11 U.S.C. § 362(b)(4), the Court held that the FTC's prosecution of the present action, entry of the Final Judgment, and enforcement of all provisions of the Final Judgment other than the monetary judgment provision, were excepted from the automatic stay imposed by the Bankruptcy Code, as an exercise of the Commission's police or regulatory powers. (Doc. No. 142 at 8.) On August 30, 2011, the United States Bankruptcy Court for the Western District of Missouri, with Defendant Murkin's consent, entered an order granting the FTC's motion to dismiss the Murkin Bankruptcy case. *See In re Murkin*, No. 11-41305-drd7, Doc. No. 30 (Bankr. W.D. Mo. Aug. 30, 2011). Accordingly, the automatic stay preventing enforcement of the monetary judgment provision of the Final Judgment was terminated. *See* 11 USC § 362(a), (c)(1)-(2).

The FTC now moves for an Order requiring turnover to the Commission of frozen assets subject to the constructive trust that is held by third parties in the name of, or for the benefit of, Defendants, in partial satisfaction of the monetary judgment provision of the Final Judgment.

2

## II. ANALYSIS

Defendants consent to nearly all of the relief that Plaintiff requests in its Motion for Turnover of Certain Frozen Assets Held by Third Parties (Doc. No. 151). The only issue in dispute is whether $15,000 in funds that was paid to defense counsel after the Court imposed its asset freeze order should be paid to the FTC.

On January 22, 2010, defense counsel, Thayer C. Lindauer, entered into an Engagement Agreement with the Defendants. The Engagement Agreement stated the following:

> COMPENSATION AND COSTS: Client will be charged for Counsel's services as follows: **The initial fee to be charged to Client is $15,000 USD to retain the services of Counsel and in consideration of time previously spent by Counsel interviewing witnesses, reviewing documents and undertaking legal research and is nonrefundable.** Client shall pay the initial fee and an additional $160,000, all of which shall be wired to Counsel's Attorney Trust Account with Chase Bank. The initial fee and subsequent Counsel fees and reasonable and necessary costs expended by Counsel shall be drawn by Counsel from the Trust Account aforementioned. Counsel may pay costs directly from Trust Account, and shall draw his fees subsequent to the initial fee one the first of each calendar month hereafter commencing March 1, 2010 concurrently, providing Client with an itemized billing of fees earned and costs expended. Client is advised that nonrefundable fees may be refundable if determined to be unreasonable. (emphasis added)

(Doc. No. 154-1 Ex. A). Upon receipt of check for initial fee from defense counsel's client in the amount of $15,000, Mr. Lindauer prepared and signed Trust Account Check #1854 on the evening of January 22, 2010 (Doc. No. 154). On January 23, 2010, Mr. Lindauer mailed the check to his law firm Operating Account at National Bank (Doc. No. 154). On January 26, 2010, the Court issued a TRO, which included, among other things, a freeze on Defendants' assets (Doc. 13). The TRO stated that Defendants and their Representatives are restrained and enjoined from transferring or withdrawing assets that are "owned or controlled by or held for the benefit of, directly or indirectly, any of the Defendants" or that are "held by an agent or service provider of any of the Defendants, as a retainer for the agent's provision of services to Defendant." On

3

January 28, 2011, National Bank entered the $15,000 client initial fee check as a deposit. On January 29, 2011, the drawer bank posted the check as paid against Mr. Lindauer's Attorney Trust Account.

Plaintiff contends that the $15,000 check is subject to the asset freeze and thus, pursuant to the Court's Final Judgment, should be turned over to the Commission, along with the uncontested frozen assets held by third parties, for the benefit of the consumers harmed by Defendants. Plaintiff claims that funds ordered by check to be paid are transferred only upon payment of the check by the bank. Since the check was not paid until January 29, 2010 – three days after the asset freeze was imposed – Mr. Lindauer was holding the $15,000 "for the benefit of, directly or indirectly," a Defendant and/or "as a retainer for [an] agent's provision of services to a Defendant." The funds, therefore, are subject to the asset freeze. (Doc. No. 155).

Mr. Lindauer contends that the initial fee of $15,000 paid by Defendants to Mr. Lindauer was a lawful contracted fee under the Arizona Rules of Professional Conduct, to which he is subject, and was paid on January 22, 2010 – four days before the entry of the stipulated TRO containing the asset freeze. Mr. Lindauer claims that the date upon which a check is presented for payment is the date upon which a check is deemed paid or deemed the date of transfer. Mr. Lindauer has acted continuously as counsel for Defendants and has continued his availability since January 22, 2010. He charged the Defendants a "classic retainer" in his initial fee and performed an initial 12 hours of legal work on behalf of the Defendants. As such, Mr. Lindauer contends that the funds are not subject to the asset freeze. (Doc. No. 154).

Although the Arizona Rules of Professional Conduct permit the contracted fee between Mr. Lindauer and Defendants, "[w]hat constitutes a transfer and when it is complete is a matter of federal law." Barnhill v. Johnson, 503 U.S. 393, 397 (1992). "Receipt of a check gives the

4

recipient no right in the funds held by the bank on the drawer's account." Id. at 398. Therefore, "[f]or the purposes of payment by ordinary check,…a transfer….occurs on the date of honor, and not before." Id at 400. As such, the date of honor and/or date of transfer in this case is January 29, 2011. The Court froze and/or enjoined all of Defendants assets from being transferred that are "owned or controlled by or held for the benefit of, directly or indirectly, any of the Defendants" or that are "held by an agent or service provider of any of the Defendants, as a retainer for the agent's provision of services to Defendants" three days prior to the date of transfer on January 26, 2011. This means that the funds transferred by Mr. Lindauer in the amount of $15,000 are subject to the asset freeze. These funds, along with the uncontested frozen assets held by third parties, are to be turned over to the Commission.

### III. CONCLUSION

The FTC's Motion is hereby **GRANTED**.[1] It is therefore **ORDERED** that:

#### A. DEFINITIONS

For purposes of this Order, the following definitions shall apply:

1. "Asset" shall mean any legal or equitable interest in, right to, or claim to, any real and personal property, including, but not limited to, "goods," " instruments," "equipment," "fixtures," "general intangibles," "inventory," "checks," "notes" (as these terms are defined in

---

[1] On October 11, 2011, Defendants filed their objections to Plaintiff's Proposed Turnover Order (Doc. No. 153). First, Defendant states that it was not provided with a copy of the Order and seeks to reserve its right to object to the language and terms of said Order. The Court notes that Plaintiff's Reply Suggestions evidence that Defendant received a copy of Plaintiff's Proposed Turnover Order on Tuesday, September 27, 2011, via email (Doc. No. 155 Ex. A). To date, no objections to the Proposed Turnover Over have been filed. Second, Defendants object to the Commission's claim that there are funds totaling $40,000 that are not accounted for by the Defendants and thus, are subject to the asset freeze. Plaintiff's Reply Suggestions state that the FTC does not seek turnover of an additional $40,000. This statement was made by the FTC merely to note an inconsistency in communication between defense counsel and Plaintiff (Doc. No. 155). As such, the Court declines to address this issue. Finally, Defendants request a right of Sur Reply. Plaintiff's Reply Suggestions contain no new information for which the opportunity to respond is needed.

the Uniform Commercial Code), and all chattel, leaseholds, contracts, mail or other deliveries, shares of stock, lists of consumer names, accounts, credits, premises, receivables, funds, reserve funds, and cash, wherever located.

2. "Corporate Defendant" shall mean Real Wealth, Inc., d/b/a American Financial Publications, Emerald Press, Financial Research, National Mail Order Press, Pacific Press, United Financial Publications, Wealth Research Marketing Group, and Wealth Research Publications, and its successors and assigns.

3. "Defendants" shall mean the Individual Defendant and the Corporate Defendant, individually, collectively, or in any combination.

4. "Final Judgment" shall mean the Final Judgment and Order for Permanent Injunction (Doc. No. 142) entered in this action on May 17, 2011.

5. "Frozen Account" shall mean any account containing assets frozen pursuant to Section II of the Temporary Restraining Order (Doc. No. 13 at 5-6), Section II of the Stipulated Preliminary Injunction (Doc. No. 70 at 4-6), and/or Section E of the Final Judgment (Doc. No. 142 at 14-15), as modified by the Court's February 28, 2011 and June 23, 2011 Orders (Doc. Nos. 115, 147).

6. "Frozen Assets" shall mean any assets frozen pursuant to Section II of the Temporary Restraining Order (Doc. No. 13 at 5-6), Section II of the Stipulated Preliminary Injunction (Doc. No. 70 at 4-6), and/or Section E of the Final Judgment (Doc. No. 142 at 14-15), as modified by the Court's February 28, 2011 and June 23, 2011 Orders (Doc. Nos. 115, 147).

7. "FTC" or "Commission" shall mean Federal Trade Commission.

8. "Individual Defendant" shall mean Lance Murkin.

9. The words "and" and "or" shall be understood to have both conjunctive and disjunctive meanings.

10. The word "any" shall be understood to include "all," and the word "all" shall be understood to include "any."

11. The word "each" shall be understood to include "every," and the word "every" shall be understood to include "each."

## B. TURNOVER OF CERTAIN FROZEN ASSETS HELD BY THIRD PARTIES

**IT IS FURTHER ORDERED** that:

12. In partial satisfaction of the monetary judgment set forth in Section D of the Final Judgment (Doc. No. 142 at 13-14), the following frozen assets held by third parties in the name of, or for the benefit of, Defendants, shall be transferred to the Commission as follows:

13. Within 10 days of service of this Order, **Commerce Bank**, its parent corporations, subsidiaries, affiliates, principals, and agents shall transfer to the Commission by wire transfer in accordance with instructions to be provided by the Commission, all funds in each Frozen Account held in the name of, or for the benefit of, Defendants, including, but not necessarily limited to:

- Account No. XXXX0644, held in the name of Niklan LLC;
- Account No. XXXX0611, held in the name of Lance A. Murkin; and
- Account No. XXXX0612, held in the name of Lance A. Murkin.

14. Within 10 days of service of this Order, **Bank of Lee's Summit**, its parent corporations, subsidiaries, affiliates, principals, and agents shall transfer to the Commission by wire transfer in accordance with instructions to be provided by the Commission, all funds in each

Frozen Account held in the name of, or for the benefit of, Defendants, including, but not necessarily limited to:

- Account No. XXXXXXXX3849; and
- Account No. XXXXXXXX8687;

*Provided however*, that the funds in each of the following Frozen Accounts that are held jointly in the name of, or for the benefit of, Defendant Murkin and his former wife, Dawn Shaumeyer, or any of their children, shall not be transferred to the Commission:

- Account No. XXXXXXXX4292;
- Account No. XXXXXXXX2013; and
- Account No. XXXXXXXX1060.

15. Within 10 days of service of this Order, **Click Sales, Inc., d/b/a ClickBank**, its parent corporations, subsidiaries, affiliates, principals, and agents shall transfer to the Commission by wire transfer in accordance with instructions to be provided by the Commission, all Frozen Assets held in the name of, or for the benefit of, Defendants.

16. Within 10 days of service of this Order, **PayPal**, its parent corporations, subsidiaries, affiliates, principals, and agents shall transfer to the Commission by wire transfer in accordance with instructions to be provided by the Commission, all Frozen Assets held in the name of, or for the benefit of, Defendants.

17. Within 10 days of service of this Order, **Cutting Edge Media, Inc.**, its parent corporations, subsidiaries, affiliates, principals, and agents shall transfer to the Commission by wire transfer in accordance with instructions to be provided by the Commission, all Frozen Assets held in the name of, or for the benefit of Defendants, including, but not necessarily limited to, $915.30 due to Niklan LLC pursuant to a purchase order dated February 4, 2010.

18. Within 10 days of entry of this Order, **Thayer C. Lindauer** shall transfer to the Commission by wire transfer in accordance with instructions to be provided by the Commission, all Frozen Assets that are, or have been, in his possession, custody, or control, including, but not necessarily limited to:

- All funds held in trust for Lance Murkin in JP Morgan Chase Bank, N.A. ("Chase") Account No. XXXXXXXXXXX8961; and
- $15,000, in replacement of the Frozen Assets withdrawn from Chase Account No. XXXXXXXXXXX8961 via Check No. 1854, paid January 29, 2010.

19. Within 10 days of service of this Order, **Gary L. Murkin** shall transfer to the Commission by wire transfer in accordance with instructions to be provided by the Commission, all Frozen Assets that are, or have been, in his possession, custody, or control, including, but not necessarily limited to, $53,000 held on behalf of Lance Murkin.

20. Within 10 days of service of this Order, **Charles Schwab & Co., Inc.**, its parent corporations, subsidiaries, affiliates, principals, and agents ("**Charles Schwab**") shall take all steps necessary, including selling any shares of stocks, mutual funds, or bonds, to reduce to cash all assets in any Frozen Account held in the name of, or for the benefit of, Defendants, including, but not necessarily limited to, Account No. XXXX-1719, and then transfer that cash to the Commission by wire transfer in accordance with instructions to be provided by the Commission. *Provided, however*, that prior to transferring any funds to the Commission, **Charles Schwab** may withhold any funds necessary for transfer to the Internal Revenue Service as required by law.

21. Within 10 days of service of this Order, **Farmers New World Life Insurance Company**, its parent corporations, subsidiaries, affiliates, principals, and agents ("**Farmers**") shall cancel all life insurance policies held in the name of, or for the benefit of Defendants,

9

including, but not necessarily limited to, the policies numbered XXXXX6945U and XXXXX6563U, and transfer the cash surrender value of each such policy to the Commission by wire transfer in accordance with instructions to be provided by the Commission.

22. Within 10 days of service of this Order, **Farmers** shall transfer to the Commission by wire transfer in accordance with instructions to be provided by the Commission, the cash surrender value of any annuity policy held in the name of, or for the benefit of Defendants, including, but not necessarily limited to, Policy No. XXXXX5166R.

23. All funds transferred to the Commission pursuant to this Order shall be deposited into a fund administered by the Commission or its agents to be used for equitable relief, including but not limited to redress to consumers, and any attendant expenses for the administration of such equitable relief. In the event that direct redress to consumers is wholly or partially impracticable or funds remain after redress is completed, the Commission may apply any remaining funds for such other equitable relief (including consumer information remedies) as it determines to be reasonably related to Defendants' practices alleged in the Complaint. Any funds not used for such equitable relief shall be deposited to the United States Treasury as disgorgement. The Defendants shall have no right to challenge the Commission's choice of remedies under this Paragraph. The Defendants shall have no right to contest the manner of distribution chosen by the Commission.

## C. ASSET FREEZE

**IT IS FURTHER ORDERED** that the asset freeze imposed in Section E of the Final Judgment (Doc. No. 142 at 14-15) and modified by the Court's June 23, 2011 Order (Doc. No. 147) shall remain in effect until further Order of the Court. *Provided, however*, that:

(i) Frozen Assets may be turned over to the Commission pursuant to Section II, above, and upon completion of the turnover, the asset freeze shall be lifted permanently with respect to the assets listed in Section II, above, and

(ii) The asset freeze shall be lifted permanently with respect to the funds in each of following Frozen Accounts that are held by Bank of Lee's Summit jointly in the name of, or for the benefit of, Defendant Murkin and his former wife, Dawn Shaumeyer, or any of their children:

- Account No. XXXXXXXX4292;
- Account No. XXXXXXXX2013; and
- Account No. XXXXXXXX1060.

## D.  RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this matter for purposes of construction, modification and enforcement of this Order.

**IT IS SO ORDERED.**


Date:  December 5, 2011                              /s/ Fernando J. Gaitan, Jr.
Kansas City, Missouri                                Fernando J. Gaitan, Jr.
                                                     Chief United States District Judge